United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Insight Securities, Inc. and Intelligenics, Inc., Plaintiffs, <br><br> v. <br><br> Deutsche Bank Trust Company Americas, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 20-23864-Civ-Scola <br> ) <br> ) <br> ) |

**Order Granting Motion to Dismiss**

Plaintiffs Insight Securities, Inc. and Intelligenics, Inc., Insight's owner, complain Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank") improperly transferred—and then sold—securities belonging to various Insight clients through a Deutsche Bank account that was being used to facilitate an unraveling Ponzi scheme. (2nd Am. Compl. ("Compl."), ECF No. 46.) In seeking damages from Deutsche Bank, the Plaintiffs lodge a single count of negligence in their complaint. (*Id.* ¶¶ 110–21.) In response, Deutsche Bank seeks dismissal of the complaint, arguing the Plaintiffs have failed to sufficiently allege that (1) Deutsche Bank owed the Plaintiffs a duty of care; or (2) the Plaintiffs have suffered actual damages. (Def.'s Mot., ECF No. 47.) After careful review, the Court agrees with Deutsche Bank that the complaint should be dismissed and **grants** the motion (**ECF No. 47**).

**1. Background**[1]

Insight, along with providing custodial services, acts as a securities broker/dealer and executes orders for the purchase and sale of securities for its customers. (Compl. ¶ 1.) Deutsche Bank operates as a bank, accepts deposits, makes loans, engages in private and commercial banking services, and provides investment management services. (*Id.* ¶ 3.)

Rado Limited Partnership, a New Zealand entity, opened an account at Deutsche Bank Wealth Management in 2011. (*Id.* ¶¶ 7–8.) Fernando Haberer, related by marriage to the owners of Rado, was the independent investment advisor on the Rado account. (*Id.* ¶¶ 10–12.) Rado provided Deutsche Bank with a trading authorization, advising Deutsche Bank that Haberer and his company, Biscayne Capital S.A. (Uruguay), had power of attorney to trade on

---
[1] This background is based on the allegations the Plaintiffs present in their complaint. For the purposes of evaluating Deutsche Bank's motion, the Court accepts the Plaintiffs' factual allegations as true and construes the allegations in the light most favorable to them per Federal Rule of Civil Procedure 12(b)(6).

the account. (*Id.* ¶¶ 11, 13, 15.) At some point, the complaint doesn't specify when, Haberer began running a Ponzi scheme, involving a series of notes issued by Biscayne Capital, and others, ostensibly to develop real estate in Florida. (*Id.* ¶ 29.)

Associated with the operation or unraveling of the scheme, various trades Haberer initiated in the Rado account, involving the notes, failed throughout 2017. (*Id.* ¶¶ 41, 52–55, 62.) Because Deutsche Bank employees who serviced the account—Reynaldo Figueredo and Gloria Molina—did not accurately record the failed trades and because they also improperly relied on Biscayne Capital to set the prices for the notes in the account, it was not readily or immediately apparent that the Rado account had become overdrawn by several million dollars. (*Id.* ¶¶ 41, 59–60, 62, 69.) By January 2018, the overdraft ballooned, leaving Rado indebted to Deutsche Bank by over $12 million. (*Id.* ¶¶ 68, 71.)

On March 5, 2018, Figueredo told Haberer that if the failed sales of the notes in the Rado account did not settle, by the end of the day on March 7, Deutsche Bank would begin liquidating other positions in the account to satisfy the overdraft. (*Id.* ¶ 73.) In response, Haberer assured Deutsche Bank that he was good for the overdraft amounts, providing financial statements indicating he had access to assets of over $48 million. (*Id.* ¶¶ 74–75.) Haberer further informed Deutsche Bank that, if necessary, he could also replace the overdrawn funds from yet another, albeit unnamed, source. (*Id.* ¶ 76.) In addition, Haberer sent in a summary page for a J.P. Morgan account for another individual or entity, showing the availability of assets of nearly $44 million. (*Id.* ¶ 77.)

On March 7, to head off the threats of liquidation, Biscayne Capital advised Molina that it had instructions to transfer various securities to the Rado account. (*Id.* ¶ 80.) The next day, Haberer, through another one of his companies, Total Advisors, LLC, sent a request to Insight to transfer over $5 million in securities out of an account owned by Clodi Holdings, Ltd. (*Id.* ¶ 81.) In the request to Insight, Haberer—who had authority over the Clodi Holdings account through a power of attorney granted to Total Advisors—provided a Euroclear number that Molina had previously supplied to Biscayne. (*Id.* ¶¶ 23, 82.) Haberer's instructions directed Insight to deliver the funds to Depository Trust Corporation and to reference "account 33-3****1"—account 33-3****1 being the account number for the Rado account at Deutsche Bank. (*Id.* ¶ 82.) Insight processed Haberer's transfer request, conveying the identified Clodi Holdings securities to Depository Trust. (*Id.* ¶ 84.) Depository Trust then transferred the securities to State Street, Deutsche Bank's agent for Depository Trust transactions. (*Id.*) State Street, in turn, informed Deutsche Bank that the transfers from Depository Trust were for the benefit of "Clodi Holdings Ltd" and

were "F/O/A Clodi Holdings Ltd for A/C AP***3 FBO Clodi Holdings Ltd." (*Id.* ¶ 85 (cleaned up).) Clodi Holdings did not maintain an account at Deutsche Bank, nor was AP***3 a Deutsche Bank account number. (*Id.* ¶ 86.) Regardless, Deutsche Bank deposited the securities into the Rado account, ordered them sold, and then applied the proceeds to reduce the account's overdraft. (*Id.* ¶ 88.)

A week later, on March 15, Figueredo advised Deutsche Bank that most of the advisors had left Biscayne Capital and that it was about to shutter its doors. (*Id.* ¶ 89.) On the same day, Insight received instructions to transfer more securities: the remaining securities from the Clodi Holdings account; and securities from two other accounts, one held by Bralisol Associates, Ltd., and another held by an Argentinian citizen, Maria De Los Angeles Aparain Borjas. (*Id.* ¶¶ 24, 90, 93, 100.) As with the Clodi Holdings account, Total Advisors had power of attorney to enter orders for the purchase and sale of securities in both the Bralisol and the Aparain accounts at Insight. (*Id.* ¶¶ 19, 26.) The Clodi Holdings instructions, like before, directed Insight to transfer those securities to Depository Trust. (*Id.* ¶ 90.) That transfer was then, like the transfer the week earlier, sent to Deutsche Bank's Depository Trust transfer agent, State Street. (*Id.* ¶ 91.) The complaint provides less detail about the transfers of the Bralisol and Aparain securities, but it appears those transactions trod a similar path: the transfer instructions specified the same Depository Trust-State Street number, 0987, and identified account numbers and clients that were not previously associated with Deutsche Bank. (*Id.* ¶¶ 94, 97, 100, 104.) Again, despite these disconnections, Deutsche Bank deposited the securities in the Rado account, ordered them sold, and then applied the proceeds to reduce the overdraft. (*Id.* ¶¶ 99, 106.)

The Plaintiffs initiated this action on September 18, 2020, claiming Deutsche Bank was negligent in depositing the Clodi Holdings, Bralisol, and Aparain securities into the Rado account and in applying the proceeds to that account's overdraft.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound

to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 3. Analysis

#### A. The Plaintiffs fail to allege a basis for any duty of care Deutsche Bank owed them.

In its motion, Deutsche Bank argues the Plaintiffs fail to state a claim for negligence because they have failed to set forth a duty of care running from Deutsche Bank to the Plaintiffs. (Def.'s Mot. at 9–13.) In opposition, the Plaintiffs submit that "[t]he specific facts of this case . . . establish a legal duty" based on a "foreseeable zone of risk" to the Plaintiffs, created when Deutsche Bank "failed to follow [Insight's] explicit transfer instructions." (Pls.' Resp. at 6, 7.) After careful review, the Court agrees with Deutsche Bank and finds the Plaintiffs have not alleged a basis from which the Court could infer a duty of care that Deutsche Bank owed to the Plaintiffs.

"To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "Establishing the existence of a duty under Florida's negligence law is a minimum threshold legal requirement that opens the courthouse doors." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (cleaned up). While the Plaintiffs set forth a number of facts alleging that Deutsche Bank breached *a* duty, they fail to allege facts showing that this duty ran to the Plaintiffs in particular, as opposed to, for example, Insight's customers.

To be sure, "[w]here the plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability." *Id.* Here, the Plaintiffs submit the Court should find a duty of care running between, on the one hand, Insight, as the custodian of its clients' securities, and, on the other, Deutsche Bank, the recipient of those securities from Insight. As best the Court can discern, the Plaintiffs maintain this duty arises from two sources: (1) a custodial bank's legal duty to effect transfers as instructed; and (2) the particular facts of this case. But neither of these bases establishes a duty of care owed by Deutsche Bank to the Plaintiffs themselves.

"Florida law recognizes four sources of duties of care: statutes and regulations, judicial interpretations of legislation, judicial decisions, and duties arising from the facts of a particular case." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank, N.A., Inc.*, 677 F. App'x 573 (11th Cir. 2017). The Plaintiffs' first argument appears to center on duties they claim Deutsche Bank owes them based on "statutes and regulations" and "judicial decisions." For example, in their opposition, the Plaintiffs quote case law they say establishes a custodial bank's duty to "to execute the written orders it receives from the account holder's designated agent," *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 943 (11th Cir. 2014) (cleaned up). Further, in their complaint, the Plaintiffs point to Deutsche Bank's alleged failure to comply with its own internal policies, various provisions of the Bank Secrecy Act, and Financial Industry Regulatory Authority rules. (*E.g.,* Compl. ¶¶ 31–40, 44, 54 n.5, 78, 113, 115.) The Court finds the Plaintiffs miss the mark: they fail to draw a connection between any of the duties that might spring from these legal authorities to a duty of care that would be owed to the Plaintiffs themselves, as opposed to, for instance, the actual owners of the transferred securities—that is, the Plaintiffs' customers. Indeed, the Plaintiffs' reliance on Deutsche Bank's violations of various policies, regulations, or rules is misplaced: none of those violations establishes a duty of care running from Deutsche Bank to the Plaintiffs. The Plaintiffs themselves explicitly concede this, acknowledging that they are not "attempt[ing] to convert a regulatory enforcement statute into . . . a basis to establish a legal duty." (Pls.' Resp. at 9.)  As the Plaintiffs explicitly recognize, all they have alleged are facts "giv[ing] rise to the inference that [Deutsche Bank] acted in a negligent manner." (*Id.*) What they have failed to allege is that any of Deutsche Bank's errors and missteps violated a duty of care actually owed to the Plaintiffs.

Similarly unavailing is the Plaintiffs' reliance on "the facts of [this] particular case" (*id.* at 5) to give rise to a duty of care owed to them by Deutsche Bank. As the Plaintiffs point out, "Florida recognizes that a legal duty

will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." *Virgilio*, 680 F.3d at 1339 (cleaned up). But, "[a] new duty is more likely to be imposed under the 'foreseeable zone of risk' standard under circumstances where," unlike here, "the plaintiff has suffered personal or property damage." *Id.* Instead, "[w]here the plaintiff seeks only the recovery of an economic loss," as in this case, "the duty element of negligence law serves as an important barrier to over-extension of liability." *Id.* With these general principles in mind, "it is important to consider whether the specific relationship between the plaintiff and defendant warrants imposing a duty on the defendant to protect the plaintiff's purely economic interests." *Id.* at 1340. As set forth below, the Court does not find the facts alleged in the complaint warrant extending liability to Deutsche Bank for any losses the Plaintiffs claim in this case.

Here, as alleged in the complaint, Insight, upon Haberer's orders, processed the transfer of its customers' securities to Depository Trust, which then transferred them to State Street, as Deutsche Bank's agent. (*E.g.*, Compl. ¶¶ 84, 91; Pls.' Mot. to File Sur-Reply, ECF No. 57, 3 (the "securities came from []Insight, through its agent[]"); 3–4 ("The various securities at issue in this matter were transferred by Insight via the Depository Trust Company transfer system.").) The complaint alleges that Deutsche Bank then took control of the securities from State Street, depositing them into the Rado account. (*E.g.*, Compl. ¶¶ 88, 92, 99, 106.) Contrary to the Plaintiffs' insistence, though, the Court does not find that these allegations give rise to the kind of relationship that should impose a duty on Deutsche Bank to protect the Plaintiffs.

First, the complaint itself does not allege facts showing that Deutsche Bank was aware that Insight initiated the transfer order. If Deutsche Bank was unaware of Insight's involvement of the transactions, the Court is hard-pressed to find that Deutsche Bank should have foreseen that the Plaintiffs fell into a zone of risk as a result of how Deutsche Bank handled the transactions. In other words, the Plaintiffs fail to convince the Court that their complaint alleges the kind of relationship that would "warrant[] creating a duty to protect economic interests outside contract and statutory law." *Monroe v. Sarasota County Sch. Bd.*, 746 So. 2d 530, 534 n.6 (Fla. 2d DCA 1999).

Second, even if the Plaintiffs had alleged facts showing that Deutsche Bank was fully aware of Insight's involvement in the transfers, the Plaintiffs still fail to allege facts from which the Court could infer Deutsche Bank should have foreseen Insight's, as opposed to Insight's customers', losses.[2] The

---

[2] In what the Court construes as a motion to file a sur-reply, the Plaintiffs seek to introduce screenshots demonstrating Deutsche Bank's knowledge that the transfer instructions

Plaintiffs' allegations regarding their contention that Deutsche Bank knew or should have known that the Plaintiffs would suffer losses as a result of Deutsche Bank's handling of the securities transfer are conclusory and devoid of factual underpinnings. For example, the Plaintiffs complain repeatedly that Deutsche Bank's actions, in depositing the securities into the Rado account and then selling them to cover the overdraft, simply "damaged" the Plaintiffs. (*E.g.*, Compl. ¶¶ 49 (Deutsche Bank's handling of the securities "damaged the Plaintiffs"; 88 (noting the transfer was "to the detriment of Clodi and Insight"), 89 (same), 99 (similar), 106 (similar), 108 ("Plaintiffs . . . were ultimately damaged"), 122 (similar).) Notably, there are no actual facts alleged supporting the referenced "damage." Nor does the Plaintiffs' conclusory allegation that "[i]t was reasonably foreseeable that . . . [Deutsche Bank's] negligent acts would financially injure Insight" salvage the Plaintiffs' claim. (*Id.* ¶ 117.) None of these allegations, even if Deutsche Bank was fully aware that the instructions originated from Insight itself, set forth actual facts establishing a relationship between the Plaintiffs and Deutsche Bank that would warrant imposing an inference of a foreseeable zone of risk. *See Virgilio*, 680 F.3d at 1340 (noting that "difficult economic loss cases all seem to examine the relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law" and that "[c]ourts have considered allowing recovery . . . for purely economic loss where a special or fiduciary relationship exists") (cleaned up). Without allegations establishing such a relationship, the Plaintiffs fail to set forth a basis upon which the Court could infer that Deutsche Bank owed a duty of care to Insight.

### B. The complaint is devoid of factual allegations identifying damages the Plaintiffs themselves have suffered in connections with their customers' losses.

Deutsche Bank also argues the Plaintiffs' complaint should be dismissed because the Plaintiffs have failed to present sufficient factual allegations establishing their damages. (Def.'s Mot. at 13–14.) In response, the Plaintiffs insist they "have properly alleged that they were damaged." (Pls.' Resp. at 10.) The Court agrees with Deutsche Bank.

---

originated from Insight. (Pls.' Mot. at 3.) Of course, this is improper as "a party cannot amend a complaint by attaching documents to a response to a motion to dismiss." *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012). Regardless, even if these screenshots had been included with the complaint, the Court does not find they would meaningfully push the needle in the Plaintiffs' favor: that is, even if Deutsche Bank was fully aware that Insight initiated the securities transfers, that is still not enough to establish that Deutsche Bank owed a duty of care to the Plaintiffs. Accordingly, the Court **denies** the Plaintiffs' motion **as moot**. (**ECF No. 57**.)

In support of their position, the Plaintiffs argue, in their opposition to the motion to dismiss, that they "suffered damages in the form of" "lost revenue" and "significant business"; "hundreds of thousands of dollars in attorneys' fees and costs in defending claims brought by the Insight Customers"; harm to their "reputation and goodwill"; and "a significant settlement to the three Insight Customers." (Pls.' Resp. at 10.) The problem with the Plaintiffs' remonstration, though, is that these allegations appear nowhere in the Plaintiffs' actual complaint. Instead, the Plaintiffs' claims of damages are limited to solely the following allegations:

- Deutsche Bank's conduct "ultimately damaged the Plaintiffs" (Compl. ¶ 49);
- Deutsche Bank's handling of the transferred securities was "to the detriment of Clodi and Insight" (*id.* ¶¶ 88, 92);
- Deutsche Bank's handling of the transferred securities was "to the detriment of Bralisol and Insight" (*id.* ¶ 99);
- Deutsche Bank's handling of the transferred securities was "to the detriment of Aparian and Insight" (*id.* ¶¶ 106);
- "As a result of [Deutsche Bank's improper handling of the securities transfers], Plaintiffs, Clodi's, Bralisol's, and Aparain's broker/dealer, were ultimately damaged" (*id.* ¶ 108);
- Deutsche Bank's "negligence in processing the [transfers] caused Insight to incur damages" (*id.* ¶ 120); and
- Deutsche Bank's "negligence was the legal cause of Insight's alleged damages" (*id.* ¶ 121).

Every single one of these allegations is wholly conclusory and vague, falling far short of the Plaintiffs' burden of establishing actual facts to support their claim. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

The Plaintiffs also point to their allegation of "the dollar amount of the securities that [Deutsche Bank] improperly deposited Rado Account." (Pls.' Resp. at 10.) This, however, would establish Insight's *customers'* damages, not the Plaintiffs'. The Plaintiffs fail to point to any factual allegations in the complaint that would establish that Insights' customers' losses somehow translate into the Plaintiffs' own damages.

Accordingly, as an alternative basis for dismissal, even if the Plaintiffs had established a duty Deutsche Bank owed to the Plaintiffs, they have failed

to supply sufficient factual allegations establishing the damages element of their negligence claim.

### 4. Conclusion

The allegations the Plaintiffs set forth in their complaint point to serious missteps and improper account handling at Deutsche Bank. The complaint fails, however, to set forth a basis upon which the Court could infer that Deutsche Bank is liable to the Plaintiffs, as opposed to the Plaintiffs' clients, under a theory of negligence. Accordingly, the Court **grants** Deutsche Bank's motion to dismiss (**ECF No. 47**), **dismissing** the complaint **with prejudice** because the Plaintiffs have failed to state a claim for negligence under Rule 12(b)(6). Further, the Court **denies** the Plaintiffs' request for **leave to amend**, inserted as an afterthought, in a footnote, at the tale-end of the Plaintiffs' opposition to Deutsche Bank's motion to dismiss: the request is both procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.,* 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up). The deadline for amending the pleadings has also long since passed so the Plaintiffs' request is denied as untimely as well. (Am. Sched. Order, ECF No. 62, 1.)

As explained above, the Court also **denies** the Plaintiffs' motion for leave to file a sur-reply (**ECF No. 57**) **as moot**. Because of this, the Court additionally **denies as moot** the Plaintiffs' associated motion for leave to file under seal as well (**ECF No. 58**).

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on August 5, 2021.

_____
Robert N. Scola, Jr.
United States District Judge